```
              UNITED STATES DISTRICT COURT
              MIDDLE DISTRICT OF FLORIDA
                    TAMPA DIVISION
```

MANAGEMENT PROPERTIES,
LLC,

    Plaintiff,

v.                                   Case No. 8:20-cv-2984-VMC-AEP

TOWN OF REDINGTON SHORES,
FLORIDA,

    Defendant.
_____/

**ORDER**

This matter comes before the Court upon consideration of Defendant Town of Redington Shores, Florida's Motion to Dismiss Count I (Doc. # 28), filed on March 8, 2021. Plaintiff Management Properties, LLC responded on March 29, 2021. (Doc. # 29). Redington Shores replied on April 8, 2021. (Doc. # 32). For the reasons that follow, the Motion is granted.

**I.   Background**

According to the complaint, Management "operates a vacation rental business out of 17820 Lee Ave, Redington Shores, Florida, which is located within the Town's Commercial Tourist Facility ('CTF') zoning district." (Doc. # 1 at ¶ 6). The property is a "single family beachfront home" that Management has used for vacation rental purposes since

1

2017. (Id. at ¶¶ 3, 11). To facilitate and market its rental business, "[Management] utilizes a variety of peer-to-peer platforms." (Id. at ¶ 6).

Management explains that "[u]ntil August 5, 2020, [Redington Shores] did not have any ordinances in place restricting the use of single family homes within the CTF district for short term or vacation rental purposes." (Id. at ¶ 7). But on August 5, 2020, Redington Shores adopted Ordinance 20-06, which created Section 90-116 of the Code of the Town of Redington Shores, Florida. (Id. at ¶¶ 12-14). Section 90-116 "outlines a comprehensive regulatory scheme governing the operation of vacation rental properties within [Redington Shores]." (Id. at ¶ 14).

In response to the new ordinance, Management filed the instant action alleging violations of the Fourth Amendment pursuant to 42 U.S.C. § 1983 (Count I) and seeking a declaratory judgment that Section 90-116 was preempted by Florida state law (Count II).

Regarding its Fourth Amendment claim, Management challenges the following four provisions of Section 90-116: Section 90-116(C), Section 90-116(C)(5), Section 90-116(D)(2)(d), and Section 90-116(D)(1)(b)(ii). (Id. at ¶ 33).

2

>Section 90-116(C) states:
>
>Certificate of Use Required. No property owner, responsible party, or peer-to-peer or platform entity shall offer as a vacation rental, or allow any person to rent or occupy as a vacation rental, any property in whole or in part within the Town of Redington Shores, unless a Certificate of Use has first been obtained in accordance with the provisions of this section. A property may be offered as a vacation rental immediately upon submission of an application for Certificate of Use, unless and until such time as the application is thereafter rejected or revoked.

Code of the Town of Redington Shores, Fla. § 90-116(C); (Doc. # 1-1 at 7).

Pursuant to Section 90-116(C)(1), in order to receive a Certificate of Use, a property owner must submit an application containing certain information about the rental, such as the address of the property and the name and phone number of the responsible party. Code of the Town of Redington Shores, Fla. § 90-116(C)(1); (Doc. # 1-1 at 7-8).

The application must also contain a statement "acknowledging that the property is, and will be at all times during which it is used as a vacation rental, maintained in compliance with the vacation rental standards set forth in subsection (D)." Code of the Town of Redington Shores, Fla. § 90-116(C)(1)(k); (Doc. # 1-1 at 8).

Furthermore, Section 90-116(C)(5) states:

> Inspection. Upon the issuance or renewal of a Certificate of Use, the vacation rental property shall be subject to inspection, at the Town's discretion, to ensure compliance with all applicable code requirements. At the time of such inspection, at the request of the Town, the responsible party shall provide all licenses, records, and other documentation sufficient to demonstrate compliance with all requirements of this section.

Code of the Town of Redington Shores, Fla. § 90-116(C)(5); (Doc. # 1-1 at 9).

Section 90-116(D)(2)(d) requires the responsible party for each vacation rental to "[m]aintain a register with names and dates of stay of all guests, including but not limited to all transient occupants and their invitees, which shall be open to inspection by the Town." Code of the Town of Redington Shores, Fla. § 90-116(D)(2)(d); (Doc. # 1-1 at 10).

Additionally, Section 90-116(D)(1)(b)(i) requires that peer-to-peer or platform entities must:

> Only provide payment processing services, or otherwise facilitate payment for a vacation rental that has a valid Certificate of Use in accordance with this section.

But, under Section 90-116(D)(1)(b)(ii),

> A peer-to-peer or platform entity shall not be held liable pursuant to this subsection where it:

4

    (i)     As part of its vacation rental listing registration process, informs the responsible party that a Certificate of Use must be obtained before offering a vacation rental in the Town; includes a link to the Town's webpage where a Certificate of Use application can be located; requires the responsible party to confirm that such party has been advised of the Town's regulations. including the Certificate of Use requirement; and provides a dedicated field to enable the responsible party to input the Certificate of Use number before such party completes registration and lists a vacation rental on the service or platform;

    (ii)    Provides the Town on a monthly basis a report disclosing for each vacation rental listing the information entered by the responsible party in the Certificate of Use dedicated field, or whether the responsible party left that field blank; the total number of vacation rental listings on the service or platform during the prior month; and the total number of nights that vacation rentals listed on the service or platform were rented during the prior month.

Code of the Town of Redington Shores, Fla. §§ 90-116(D)(1)(b)(i) and (ii); (Doc. # 1-1 at 9).

According to Management, when taken as a whole, these sections are "facially unconstitutional as they authorize [Redington Shores] to inspect the vacation rental premises and related vacation rental business records without a warrant in violation of the Fourth Amendment." (Doc. # 1 at ¶¶ 28, 33).

5

"Further," alleges Management, "90-116(C) places an unconstitutional condition on property owner's business' right to conduct business within the Town by requiring owners of vacation rental properties to waive their Fourth Amendment Rights and consent to warrantless inspections of their properties and business records." (Id. at ¶ 34).

Redington Shores filed its answer and affirmative defenses to the complaint on January 7, 2021. (Doc. # 11). Subsequently, Redington Shores moved to dismiss Count II of the complaint (the state preemption claim) pursuant to Rule 12(b). (Doc. # 12).

On March 8, 2021, before the Court had ruled on the motion to dismiss Count II, Redington Shores filed the instant Motion to Dismiss Count I of the Complaint. (Doc. # 28). Redington Shores explains that on February 10, 2021, it adopted a new ordinance, Ordinance 21-03. (Id. at 2). Ordinance 21-03 makes several changes to Section 90-116. Town of Redington Shores, Fla. Ordinance 21-03; (Doc. # 28-1). Most importantly, it removes Section 90-116(C)(5) in its entirety and removes the inspection requirement from Section 90-116(D)(2)(d). Town of Redington Shores, Fla. Ordinance 21-03; (Doc. # 28-1 at 5-6).

Based on these amendments, Redington Shores argues that Count I is moot and should be dismissed "pursuant to Fed. R. Civ. P. 12(b)." (Doc. # 28 at 1). Management responded (Doc. # 29), Redington Shores replied (Doc. # 32), and the Motion is ripe for review.

## II. **Legal Standard**

"Article III of the Constitution limits the jurisdiction of federal courts to 'cases' and 'controversies.'" Coral Springs St. Sys., Inc. v. City of Sunrise, 371 F.3d 1320, 1327 (11th Cir. 2004). This case or controversy requirement must be present through all stages of federal judicial proceedings. Lewis v. Cont'l Bank Corp., 494 U.S. 472, 477, (1990).

In the instant Motion, Redington Shores claims that "Count I initially stated a cause of action," but "in light of the Town's adoption of Ordinance 21-03, it no longer does as the claim has become moot in light of the fact that the challenged provisions are no longer in effect and the Town has disavowed any intention to re-enact or administer any inspection regulation not in compliance with the Fourth Amendment." (Doc. # 28 at 3).

"When a subsequent law brings the existing controversy to an end the case becomes moot and should be treated

accordingly." <u>Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta</u>, 219 F.3d 1301, 1310 (11th Cir. 2000) (internal citation omitted). In such circumstances, "dismissal is required because mootness is jurisdictional." <u>Al Najjar v. Ashcroft</u>, 273 F.3d 1330, 1336 (11th Cir. 2001) (internal citation and quotations omitted). "Any decision on the merits of a moot case or issue would be an impermissible advisory opinion." <u>Id.</u>

Accordingly, the Court must decide whether Ordinance 21-03's amendments to Section 90-116 render Management's legal challenges moot. If so, the Court must dismiss the case without prejudice for lack of jurisdiction.

### III. **Analysis**

Redington Shores moves to dismiss Count I for lack of subject matter jurisdiction. (Doc. # 28 at 3-4).

Management advances three grounds why the Motion should be denied: (1) the Motion is untimely, as it was filed after the answer; (2) Redington Shores did not repeal Section(D)(1)(b)(ii), therefore there is still a live controversy; and (3) Count I includes a request for nominal damages, therefore it is not moot. (Doc. # 29). The Court will address each issue in turn.

A.  **Timeliness**

As an initial matter, the Court addresses Management's timeliness argument. Management asserts that "[b]y filing its Answer, the Town waived its right to seek dismissal pursuant to Rule 12(b)(6) via motion." (Doc. # 29 at 4).

Rule 12(b) states: "A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed." Fed. R. Civ. P. 12(b); see also Leonard v. Enter. Rent a Car, 279 F.3d 967, 971 (11th Cir. 2002) (holding that a Rule 12(b)(6) motion filed after answering the complaint was a "nullity . . . by filing an answer, the defendants had eschewed the option of asserting by motion that the complaint failed to state a claim for relief").

However, pursuant to Rule 12(h)(3), any party may challenge subject matter jurisdiction at any time. Fed. R. Civ. P. 12(h)(3); see also Arbaugh v. Y&H Corp., 546 U.S. 500, 506, (2006) (holding that the "objection that a federal court lacks subject-matter jurisdiction may be raised by a party, or by a court on its own initiative, at any stage in the litigation") (internal citation omitted)).

Although the Motion refers at one point to Rule 12(b)(6) (Doc. # 28 at 3), it also argues that the challenged language "has been repealed and will not be reenacted," therefore

9

"there no longer is a case or controversy and Count I must be dismissed as moot." (Id. at 3-4). Accordingly, the Court construes the mootness challenge as having been timely filed under Rule 12(h)(3), and will consider the Motion on the merits.

### B.   Mootness of Management's Claims

The Court next examines whether the legal issues raised by Management in Count I are moot in light of the amended ordinance. Generally, "a challenge to the constitutionality of a statute is mooted by repeal of the statute." Tanner Advert. Grp., LLC v. Fayette Cnty., GA, 451 F.3d 777, 785 (11th Cir. 2006). However, "a superseding statute or regulation moots a case only to the extent that it removes challenged features of the prior law." See Naturist Soc'y, Inc. v. Fillyaw, 958 F.2d 1515, 1520 (11th Cir. 1992) (holding that amendments to challenged regulations did not moot the plaintiff's request for injunctive relief). If the challenged features of the law "remain in place, and changes in the law have not so fundamentally altered the statutory framework as to render the original controversy a mere abstraction, the case is not moot." Id.

Here, the superseding ordinance completely removes Section 90-116(C)(5), which authorized warrantless

10

inspections of rental properties. It also deletes the portion of Section 90-116(D)(2)(d) requiring a rental's register to be "open to inspection by the Town." Any challenge to these provisions is moot, as Management can receive no further relief. See Naturist Soc'y, Inc., 958 F.2d at 1520 (finding that "[w]here a law is amended so as to remove its challenged features, the claim for injunctive relief becomes moot as to those features"); Tanner Advert. Grp., LLC, 451 F.3d at 790 (finding that a plaintiff's legal challenge to a sign ordinance was moot where an amended ordinance eliminated the challenged language).

Yet despite these excisions, Management maintains that "Count I is not moot because the Town did not repeal all of the provisions Plaintiff challenged in Count I." (Doc. # 29 at 7). Specifically, "the Town did not remove the language contained in § 90-116(D)(1)(b)(ii)." (Id.).

Section 90-116(D)(1)(b) requires peer-to-peer and platform entities to "[o]nly provide payment processing services, or otherwise facilitate payment for a vacation rental that has a valid Certificate of Use." Code of the Town of Redington Shores, Fla. § 90-116(D)(1)(b); (Doc. # 28-1 at 5). However, an entity "shall not be held liable pursuant to this subsection" if it chooses to (1) include information

about the Certificate of Use requirement as part of its registration process and (2) provide the town with a monthly report disclosing how many rental properties were listed on the platform that month, the total number of nights that rental properties on the platform were rented out that month, and how each listed rental property filled out the Certificate of Use field during registration – or whether the field was left blank. Section 90-116(D)(1)(b)(i) and (ii); (Doc. # 28-1 at 5).

Management claims this setup makes peer-to-peer and platform entities the "de facto" enforcers of the Section 90-116 regulatory scheme, indirectly forcing owners of rental units (like Management) to apply for a Certificate of Use. (Doc. # 29 at 8). Therefore, per Management, its controversy is still live.

The Court disagrees. Even if Section 90-116(D)(1)(b) does push vacation rental owners to obtain a Certificate of Use, the complaint only alleges that the Certificate requirement is harmful because applicants must consent to warrantless inspections of their property – pursuant to Section 90-116(C)(5) – and their registers – pursuant to Section 90-116(D)(2)(d). (Doc. # 1 at ¶¶ 27-28). But the new ordinance eliminates both requirements. By itself, no part of

Section 90-116(D)(1)(b) authorizes Redington Shores to conduct warrantless inspections, either of property or records.

Therefore, while Section 90-116(D)(1)(B)(ii) remains, its enforcement can no longer lead to the constitutional harm alleged in Count I. Under the new ordinance, Management is no longer required to "make its property, as well as its business records, available to [Redington Shores] for inspection at [Redington Shores's] discretion without a warrant." (Doc. # 1 at ¶ 23). Accordingly, the Court agrees with Redington Shores that the amendment fully removes the challenged features of the prior law, rendering Count I moot. See Ciudadanos Unidos De San Juan v. Hidalgo Cnty. Grand Jury Comm'rs, 622 F.2d 807, 824 (5th Cir. 1980) (noting that "[i]n those cases in which a statutory amendment has been held to moot a controversy arising under the prior version of the statute, the amendment has generally been one which completely eliminated the harm of which plaintiffs complained").

The Court is not swayed by Management's argument that this subsection still violates the Fourth Amendment because "it requires peer-to-peer [entities] to provide [Management's] rental activity to the Town without a warrant

13

and for no legitimate purpose." (Doc. # 29 at 7). Management fails to allege any standing for such a claim.

Standing requires a plaintiff to suffer "an injury in fact" that is "fairly traceable to the challenged conduct of the defendant" and "likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016). "To establish injury in fact, a plaintiff must demonstrate he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" Id. at 1548 (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992)). For an injury to be particularized, it "must affect the plaintiff in a personal and individual way." Lujan, 504 U.S. at 560 n.1. For the injury to be "concrete," it must be "real," and not "abstract;" however, it need not be "tangible." Spokeo, 136 S. Ct. at 1548–49 (internal quotation marks and citations omitted).

As stated previously, Section 90-116(D)(1)(b)(ii) does not require the owner of a rental property, like Management, to submit to any sort of inspection, warrantless or not. Rather, it asks peer-to-peer and platform entities for a monthly summary of the following data: (1) each listed rental property's Certificate of Use, or whether the rental property

14

left that field blank during registration; (2) the total number of rental properties listed on the service that month; and (3) the total number of nights that rental properties were rented out that month.

Such data is generated by the platforms themselves, not the owners of individual rental units, and is based on information that the owners voluntarily provided to the platform in order to facilitate business. Nowhere in the complaint does Management articulate how it has suffered, or could potentially suffer, from platforms sharing such generic, aggregated data.

Without any allegation of harm stemming from the ordinance, Management lacks standing to challenge Section 90-116(D)(1)(b)'s requirement that peer-to-peer and platform entities submit an aggregate monthly report to Redington Shores. Spokeo, 136 S. Ct. at 1547.

Ultimately, Management may argue that Section 90-116(D)(1)(b)(ii) still "directly impact[s] [it], as well as anyone else that use[s] peer-to-peer entities to conduct business" (Doc. # 29 at 8), but the entirety of Count I was premised on the argument that Section 90-116 "authorize[d] [Redington Shores] to inspect the vacation rental premises and related vacation rental business records without a

15

warrant in violation of the Fourth Amendment." (Doc. # 1 at ¶ 33). The revised Section 90-116 no longer authorizes such searches. Therefore, the Court agrees with Redington Shores that the Fourth Amendment concerns outlined in Count I are moot and Count I must be dismissed.

### C. Nominal Damages

Finally, the Court turns to Management's argument that its request for nominal damages saves this case from mootness. (Doc. # 29 at 9). For support, Management cites solely to the recent case Uzuegbunam v. Preczewski, 141 S. Ct. 792 (2021). (Id.).

However, that case addressed nominal damages in the context of Article III standing. See Uzuegbunam, 141 S. Ct. 792 (explaining that "[w]e granted certiorari to consider whether a plaintiff who sues over a completed injury and establishes the first two elements of standing (injury and traceability) can establish the third by requesting only nominal damages").

Indeed, the Supreme Court specifically cautioned:

> Our holding concerns **only redressability**. It remains for the plaintiff to establish the other elements of standing (such as a particularized injury); plead a cognizable cause of action, and meet all other relevant requirements. We hold only that, **for the purpose of Article III standing,**

16

>  nominal damages provide the necessary redress for a completed violation of a legal right.

Id. (internal citations omitted) (emphasis added). Thus, while Uzuegbunam stands for the proposition that nominal damages can satisfy Article III's standing requirement, it does not support Management's argument that nominal damages save its Fourth Amendment claim from dismissal as moot. Id.

Nevertheless, it is true that "[a] change in statute will not always moot a constitutional claim." DA Mortg., Inc. v. City of Miami Beach, 486 F.3d 1254, 1259 (11th Cir. 2007). "If a litigant asserts damages from the application of a constitutionally defective statute, he may be able to pursue his constitutional challenge notwithstanding later legislative changes that would appear to address his complaint." Id. However, damages claims can only save a Section 1983 claim from mootness "where such claims allege compensatory damages or nominal damages for violations of procedural due process." Id. (citing Memphis Cmty. School Dist. v. Stachura, 477 U.S. 299, 310 (1986)).

Here, Management fails to allege any facts that would connect its nominal damages claim to a **completed** violation of a legal right. The complaint demands "declaratory relief finding that the Section 90-116 of the Town Code is

17

unconstitutional on its face, injunctive relief prohibiting the Town from conducting warrantless searches or inspections of Plaintiff's vacation rental properties pursuant to Section 90-116, nominal damages to vindicate Plaintiff's constitutional rights, [and] an award of attorneys' fees and costs." (Doc. # 1 at ¶ 34). But Management does not allege any enforcement of the ordinance against it, nor any actual injury sustained as a result of the ordinance.

Accordingly, an award of nominal damages "would serve no purpose other than to affix a judicial seal of approval to an outcome that has already been realized." Flanigan's Enter., Inc. of Ga. v. City of Sandy Springs, Ga., 868 F.3d 1248, 1264 (11th Cir. 2017). With the challenged portions of the ordinance removed, Management "[has] already won . . . [it] [has] received all the relief [it] requested and there is nothing of any practical effect left for [the Court] to grant [it]." Id. In such circumstances, a prayer for nominal damages does not save a case from dismissal, as the availability of a practical remedy "is a prerequisite of Article III jurisdiction." Id. Therefore, the Court agrees with Redington Shores that Count I should be dismissed as moot, regardless of Management's request for nominal damages.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Defendant Town of Redington Shores, Florida's Motion to Dismiss Count I (Doc. # 28) is **GRANTED.**

(2) Count I of the complaint (Doc. # 1) is dismissed without prejudice as moot.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 19th day of April, 2021.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE